IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:07-CR-71-1 |
| | ) | 1:06-CR-206-2 |
| JAMES THOMAS HANCOCK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The defendant-inmate, James Hancock, is serving a 477-month sentence for two armed robberies and related firearm crimes. Mr. Hancock seeks a sentence reduction to time served or 261 months pursuant to § 3582(c)(1)(A) based on a non-retroactive statutory change in the length of stacked § 924(c) sentences. This intervening change in law has resulted in a gross disparity between Mr. Hancock's sentence as imposed and one that would likely be imposed under current law. Under the Sentencing Commission's applicable policy statement and Fourth Circuit case law, this gross disparity constitutes an extraordinary and compelling circumstance. After weighing the § 3553(a) factors, the Court, in its discretion, will grant the motion in part and reduce Mr. Hancock's sentence to 360 months.

## I.  Overview

In 2006, Mr. Hancock committed two bank robberies, both involving a firearm. Doc. 176 at 1–2.[1] He was charged in two separate cases for his involvement in the

---

[1] All document citations are to the docket in No. 07-CR-71-1 unless otherwise specified by inclusion of Case No. 06-CR-206-2.

robberies. *Id.* After separate jury trials in each case, he was convicted of two counts of bank robbery, two counts of armed bank robbery, and two § 924(c) brandishing counts: one for brandishing a short-barreled shotgun and the other just for brandishing. *Id.*

On top of the sentences imposed for the bank robberies, he received a 10-year mandatory consecutive sentence on the first brandishing conviction and, as then required by statute, a 25-year mandatory consecutive sentence for the second. *Id.* at 2–3; *see also* 18 U.S.C. § 924(c)(1)(C) (2006) (amended 2018). His sentence totaled 477 months in prison. Doc. 176 at 3.

In 2018, Congress passed the First Step Act, which, among other things, amended the stacking provisions of § 924(c) so that the 25-year mandatory minimum for a second or subsequent offense applies only if the offense occurs after a first § 924(c) conviction has become final. First Step Act, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018); *see United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). The changes in this provision of the First Step Act do not apply retroactively. *Jordan*, 952 F.3d at 163.

Mr. Hancock committed the armed bank robbery underlying his second § 924(c) conviction before his first § 924(c) conviction became final. Doc. 176 at 4. Thus, if he were sentenced today, the second brandishing count would only carry a seven-year mandatory minimum sentence applied consecutively. *Id.*; 18 U.S.C. § 924(c)(1)(A)(ii).

In 2024, Mr. Hancock filed the present motion for a sentence reduction, Doc. 220; Case No. 06-CR-206-2, Doc. 331, relying on the new policy statement enacted by the Sentencing Commission. U.S.S.G. § 1B1.13. He identifies the statutory sentencing change for successive § 924(c) offenses, his evidence of rehabilitation, and his relative

2

youth at the time he committed the offenses as grounds for a sentence reduction. Doc. 220 at 2–7. He asks the Court to reduce his sentence to time served or, in the alternative, to reduce the sentence on his second § 924(c) conviction from 300 months to 84 months. *Id.* at 8. The government has responded, Doc. 226, and Mr. Hancock has filed a reply brief in further support of his motion. Doc. 229.

## II.     Crimes of Conviction and Sentencing

In 2006, Mr. Hancock, along with several co-defendants, committed a series of armed bank robberies. Doc. 160 at ¶¶ 1–2; Case No. 06-CR-206-2, Doc. 289 at ¶ 10.[2] Mr. Hancock was directly involved in two of the robberies. Doc. 176 at 10.

On March 21, 2006, Mr. Hancock, accompanied by co-defendants, entered the Industrial Federal Savings Bank in Midway, North Carolina, brandished a 12-gauge sawed-off shotgun, and yelled at the bank tellers to come out from behind the counter with their hands up and lie face-down on the floor. Case No. 06-CR-206-2, Doc. 289 at ¶¶ 11–12. He forced one of the tellers to give him money, and he said "She thinks this is a game. She's not moving fast enough. I am going to start shooting." *Id.* at ¶ 12. The robbers stole over $30,000 from the bank. *Id.* In May 2006, a grand jury returned a multi-count indictment against Mr. Hancock based on his role in the March armed bank robbery. Doc. 176 at 1.

A few months later, on July 6, 2006, Mr. Hancock, along with two co-defendants, entered a Wachovia Bank in Greensboro. Doc. 160 at ¶ 5. Mr. Hancock approached the

---

[2] The court adopted the presentence report in each case without change. Doc. 175; Case No. 06-CR-206-2, Doc. 306.

teller, removed a semi-automatic pistol from his pocket, grabbed a customer at the counter, pointed the pistol at the customer, and then pointed the pistol at the teller's chest. *Id.* Mr. Hancock shouted at two of the tellers to give him money. *Id.* He jumped on the counter, began grabbing money and putting it in his bag, and told them to give him the rest of the money or he and his co-defendants would "start shooting." *Id.* Mr. Hancock and the co-defendants stole over $15,000 from the bank. *Id.* at ¶ 6.

In October 2006, Mr. Hancock was tried for charges related to the March robbery. He was convicted of bank robbery (Count Three), armed bank robbery (Count Four), and carrying and brandishing a short-barreled shotgun during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Five). Doc. 176 at 1–2.

On February 26, 2007, before he was sentenced for these three crimes, Mr. Hancock was indicted for his involvement in the July armed bank robbery. *Id.* at 2. Soon thereafter, on March 6, 2007, Mr. Hancock was sentenced for the March 2006 robbery convictions. *Id.* His total offense level was 23, and his criminal history category was I, making the guideline range for the armed bank robbery 46 to 57 months. Case No. 06-CR-206-2, Doc. 115 at 5. In addition, the guideline recommendation for the corresponding § 924(c) conviction was 120 months. *Id.* The sentencing court considered Mr. Hancock's age and minor criminal history alongside the seriousness of his offenses.[3] Doc. 176 at 2. The court concluded that a sentence near the top of the guideline range of 54 months for the armed bank robbery count was appropriate, followed by the consecutive 120-month mandatory minimum sentence required under 18 U.S.C.

---

[3] The sentencing judge has retired, and the case was reassigned to the undersigned.

4

§ 924(c)(1)(B)(i) for the count of brandishing a firearm during a crime of violence, and five years of supervised release. *Id.*; Case No. 06-CR-206-2, Doc. 96 at 3.

Later that year, Mr. Hancock was found guilty by a jury of the three crimes arising out of the July 2006 robbery: bank robbery (Count One), armed bank robbery (Count Two), and carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Three). Doc. 176 at 2; Doc. 48 at 1. Under the law at the time, this § 924(c) conviction triggered a 25-year mandatory minimum consecutive sentence because it was a second offense. Doc. 176 at 2–3 (citing 18 U.S.C. § 924(c) (2006)); *see also Jordan*, 952 F.3d at 171 (discussing stacking and the First Step Act).

Mr. Hancock's total offense level was 23, and his criminal history category was III, making the guideline range on the armed bank robbery 57 to 71 months. Doc. 153 at 7. The sentencing court concluded that a sentence near the bottom of the guideline range for the robbery counts was appropriate, considering Mr. Hancock's lengthy sentence for the charges stemming from the March 2006 robbery and the 25-year mandatory minimum consecutive sentence for the second § 924(c) conviction. Doc. 176 at 3. The court sentenced Mr. Hancock to a total of 357 months imprisonment on these charges: 57 months for the bank robbery counts, to run concurrently with the bank robbery sentences arising from the March 2006 robbery, and 300 months for the firearm offense, to run consecutively to all other sentences, followed by five years of supervised release. *Id.*

In summary, Mr. Hancock is serving a 477-month sentence: concurrent 54- and 57-month sentences on the armed bank robbery convictions, followed by 120 months for

his first § 924(c) conviction, followed by 300 months for his second § 924(c) conviction. *Id.* This total sentence is three months shy of 40 years.

### III.    Earlier Compassionate Release motions and the Pending Motion

This is Mr. Hancock's fifth motion for compassionate release, but it is his first since the enactment of the policy statement in November 2023. *See* Docs. 164, 177, 204, 216, 220. In February 2020, Mr. Hancock filed his first compassionate release motion, asserting that the statutory sentencing changes for successive § 924(c) charges were an extraordinary and compelling circumstance that warranted a sentence reduction. Doc. 176 at 4. A few months later, he filed a paper writing that raised as an additional basis his health risks from the COVID-19 pandemic. *Id.* The Court appointed counsel to represent Mr. Hancock and authorized him to file an amended § 3582(c)(1)(A) motion. *Id.*

The Court denied Mr. Hancock's motion, holding that Mr. Hancock was not close to serving a sufficient sentence, and that "any reduced sentence would be at least 22 years . . . and it is entirely likely that a longer sentence for these two violent robberies would be necessary to provide just punishment, protect the public, and promote respect for the law." *Id.* at 11. The Court denied the motion without prejudice so Mr. Hancock could renew his motion once he was closer to serving a more appropriate sentence and once the law on compassionate release motions further developed. *Id.* at 11–12.

In July 2021, Mr. Hancock filed a renewed motion for a sentence reduction. Doc. 177. He asked the Court to reconsider its previous order, pointing out his disagreement with several findings and attempting to ameliorate some of the concerns expressed by the Court in deciding to deny the motion for the time being. *See id.* The Court denied the

renewed motion; it held that a time-served sentence would not be consistent with the § 3553(a) factors and that Mr. Hancock could renew his motion "[i]f and when [he] is closer to serving the mandatory minimum sentences required under the law today for his federal crimes." Doc. 180 at 5. That decision was upheld on appeal. *See United States v. Hancock*, No. 21-7393, 2022 WL 604048 (4th Cir. Mar. 1, 2022) (per curiam).

In August 2022, Mr. Hancock filed a third motion for compassionate release asserting, as he had before, that sentencing changes under the First Step Act support a shorter sentence. Doc. 204. The Court denied the motion, once again finding that he had not served close enough time to a sentence he would likely receive today and that the § 3553(a) factors still counselled against relief. Doc. 206 at 2–3. The Court also noted that the Sentencing Commission would likely be issuing a policy statement that would be helpful in evaluating Mr. Hancock's case. *Id.* at 3.

In May 2023, Mr. Hancock filed a fourth motion for compassionate release. Doc. 216. In addition to invoking the changes to the First Step Act, Mr. Hancock based his motion on his daughter's health issues and his need to assist his daughter's mother in her care. *Id.* The Court denied that motion, finding that he had not presented an extraordinary and compelling circumstance and that the § 3553(a) factors still did not support relief. Doc. 219 at 3–4.

Mr. Hancock filed the present motion in January 2024, Doc. 220,[4] relying on the new policy statement enacted by the Sentencing Commission. U.S.S.G. § 1B1.13. He

---

[4] Mr. Hancock's motion was also docketed in CM/ECF on his first case. Case No. 06-CR-206-2, Doc. 331.

identifies the statutory sentencing change for successive § 924(c) offenses, his rehabilitative efforts, and his relative youth at the time he committed the offenses as grounds for a sentence reduction. Doc. 220 at 3–7. He asks the Court to reduce his total sentence to time served or, in the alternative, to 261 months by imposing an 84-month sentence on the second brandishing count instead of the 300-month sentence he received. *Id.* at 8.

Mr. Hancock's motion was originally mistakenly docketed as a motion for a reduced sentence pursuant to a retroactive amendment, Text Order 12/10/2024, and the probation office filed a memorandum asserting that Mr. Hancock does not qualify for a sentence reduction as a zero-point offender. Doc. 222. After Mr. Hancock filed a response clarifying that he was seeking a reduced sentence based on a non-retroactive change in law, Doc. 223, the Court ordered that the motion be docketed as a compassionate release motion. Text Order 12/10/2024. The government responded to Mr. Hancock's motion, asserting that if the Court finds a sentence reduction appropriate, it should reduce Mr. Hancock's total sentence to no less than 360 months. Doc. 226 at 1.

Mr. Hancock also filed a motion entitled "Motion Requesting Judicial Notice Pursuant to Fed. R. Evid. 201(c)(2)." Doc. 224. He asks that the Court take judicial notice of the non-retroactive amendment to the sentencing guidelines that changes how the guidelines consider age. *Id.*

## IV.    Other Relevant Facts

Mr. Hancock was 18 years old at the time he committed these robberies. *See* Doc. 160 at 2 (listing date of birth as November 22, 1987). Before the robberies, he had been

8

adjudicated delinquent for driving after consuming alcohol and driving without a valid license at age 15. *Id.* at ¶ 25. After he turned 16, which at the time was the age of adult responsibility in North Carolina, he was charged in state court for felony larceny of a motor vehicle and felony robbery with a dangerous weapon. *Id.* at ¶ 28. Those charges stemmed from conduct that occurred the year before the armed robberies, and they remained pending when he was sentenced for the federal crimes. *Id.*; Case No. 06-CR-206-2, Doc. 289 at ¶ 34.

At the time he was sentenced for his federal crimes, Mr. Hancock also had a pending first-degree murder charge in state court stemming from the murder of Darien Wright, which happened just 12 days after Mr. Hancock committed the second bank robbery. Doc. 160 at ¶ 30; Case No. 06-CR-206-2, Doc. 289 at ¶ 36. Well after Mr. Hancock was sentenced for his federal crimes, he pled guilty to second-degree murder and received a 220- to 273-month sentence to run concurrently with his federal sentences. Doc. 180 at 3–4; Doc. 178 at 2–3. In a previous order denying one of Mr. Hancock's requests for compassionate release, the Court held that "[t]he new evidence about his murder conviction will be relevant and will have to be weighed with all the other circumstances and § 3553(a) factors as they exist at that time." Doc. 180 at 5.

Mr. Hancock is now 37 years old. *See* Doc. 160 at 2. During his incarceration, he has earned his GED and completed hundreds of hours of educational and vocational courses, including courses on interview skills, victim awareness, and re-entry. Doc. 227-1. He has had two infractions during his incarceration: one in 2010 for possessing a dangerous weapon, and one in 2015 for failing to stand for count. Doc. 227-2.

9

Mr. Hancock does not provide information in the present compassionate release motion about his reentry plan. In a previous motion, he said that if released, he plans to live with his mother in Greensboro and that he intends to support himself by earning his commercial driver's license and working as a truck driver. Doc. 164-1.

## V. Compassionate Release Standard

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart." (cleaned up)). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits. *See* 18 U.S.C. § 3582(c); *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). Section 3582(c)(1)(A), often colloquially if somewhat inaccurately called the "compassionate release" provision, is one such statutory provision. *See Jenkins*, 22 F.4th at 169.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, U.S.S.G. § 1B1.13, and that the relevant § 3553(a) sentencing factors do not counsel against early release. *See United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025); *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024). Even if a court finds extraordinary and compelling reasons support release, in its discretion, it may deny

10

a defendant's motion after balancing the applicable § 3553(a) factors.  *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

Effective November 1, 2023, the U.S. Sentencing Commission amended its policy statement to cover motions for sentence reduction filed by defendants and to detail the extraordinary and compelling reasons sufficient to support such a motion under § 3582(c)(1)(A).  U.S.S.G. § 1B1.13.  As is relevant here, the new policy statement authorizes a finding of extraordinary and compelling reasons if:  (1) the defendant is serving an unusually long sentence; (2) the defendant has served at least ten years of the sentence; and (3) an intervening change in law has produced a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  U.S.S.G. § 1B1.13(b)(6).  In the Fourth Circuit, an intervening change in law can be an extraordinary and compelling circumstance even if it is not retroactive.  *United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020); *United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (reaffirming *McCoy* after the policy statement and holding that "[n]onretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence.").[5]

The policy statement also permits a court to find extraordinary and compelling circumstances for "any other circumstance or combination of circumstances that . . . are similar in gravity" to the first four reasons listed in the policy statement.  U.S.S.G.

---

[5] Other circuit courts disagree, concluding that nonretroactive changes in law cannot be the basis for a finding of an extraordinary and compelling circumstance.  *See, e.g.*, *United States v. Rutherford*, 120 F.4th 360, 363 (3d Cir. 2024); *United States v. Austin*, 125 F.4th 688, 693 (5th Cir. 2025); *United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025).

§ 1B1.13(b)(5). But the policy statement makes clear that this provision is not available to consider a change in the law. U.S.S.G. § 1B1.13(c) ("Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.").

## VI.    The First Step Act Changes the Law for Stacked § 924(c) Convictions

Among other offenses, Mr. Hancock was convicted of two counts of brandishing a firearm in connection with a crime of violence under § 924(c). Doc. 176 at 2. As summarized *supra*, Congress changed the mandatory minimum for the second offense when it passed the First Step Act. As is relevant here, now the 25-year mandatory minimum for a subsequent § 924(c) offense is only imposed if the offense occurs after the conviction for the first offense is final. 18 U.S.C. § 924(c); *Jordan*, 952 F.3d at 171. This statutory change is not retroactive. *Jordan*, 952 F.3d at 163.

Mr. Hancock committed the offense underlying his second § 924(c) conviction in July 2006. Doc. 176 at 4. He was found guilty of the first robbery in October 2006, and he was sentenced on March 6, 2007. *Id.* at 2. Both his trial and sentencing occurred well after he committed the second robbery. *See* Doc. 160 at ¶ 5 (listing date of second robbery as July 6, 2006). If convicted and sentenced for these two crimes under the current statute, Mr. Hancock would be subject to a seven-year consecutive mandatory minimum sentence on the second § 924(c) conviction. In other words, the statutory minimum for both § 924(c) convictions would be 17 years, not 35 years.[6] The statutory

---

[6] As noted *supra*, Mr. Hancock's first § 924(c) conviction carried a 10-year mandatory minimum sentence because he used a short-barreled shotgun in violation of 18 U.S.C. § 924(c)(1)(B)(i). Doc. 176 at 7 n.7.

12

maximum of life is not affected, since the statute, both then and now, does not contain a statutory maximum. 18 U.S.C. § 924(c).

## VII. Discussion

### A. Exhaustion

Mr. Hancock presents evidence that he exhausted his administrative options. Doc. 220 at 1–2; Doc. 220-1. The government does not contend otherwise. *See* Doc. 226; *see also Muhammad*, 16 F.4th at 130 (holding that courts should not address the exhaustion requirement if it is not invoked by the government).

### B. Extraordinary and Compelling Circumstances

As is relevant here, extraordinary and compelling circumstances exist when the defendant has served over 10 years, the sentence he is serving is unusually long, and there has been an intervening change in law that has produced a gross disparity between the sentence being served and the sentence likely to be imposed if sentenced today. U.S.S.G. § 1B1.13(b)(6). Mr. Hancock has been in federal custody since October 2009. Doc. 220-3. That is well over the 10-year minimum required under § 1B1.13(b)(6).

As this Court previously noted, the policy statement does not define what constitutes an "unusually long sentence," nor does it define a "gross disparity." *United States v. Martin*, No. 11-CR-48-2, 2025 WL 1092723, at *5 (M.D.N.C. Apr. 11, 2025). Both questions are factual and require comparison to baselines that may be difficult to ascertain. Courts determine an appropriate sentence based on a myriad of factors that vary from case to case, making it hard to know what a "usual" sentence is. Without knowing the range of what is "usual," one cannot tell if a sentence is "unusual."

13

Similarly, determining the sentence likely to be imposed now, against which one determines whether there is a "gross disparity," is not necessarily straightforward. Recalculating someone's guideline range or mandatory minimum does not tell the whole story. It does not take into account, for example, the possibility that the court would impose an above-guidelines sentence. *Id.*

Neither party has provided helpful evidentiary support for what a "usual" sentence would be for two armed bank robberies, each involving brandishing a firearm and threatening victims. But the government does not dispute that Mr. Hancock's 477-month sentence is unusually long. *See* Doc. 226. Case law in this circuit tends to support that position. *See, e.g.*, *United States v. Berry*, No. 05-CR-119, 2024 WL 4466828, at *1 (M.D.N.C. Oct. 10, 2024) (reducing sentence to 314 months where the defendant was convicted of two armed bank robberies and two brandishing counts after trial); *United States v. Gilchrist*, No. 02-CR-245, 2025 WL 388328, at *6–7 (D. Md. Feb. 4, 2025) (reducing sentence to 37 years for involvement in three armed bank robberies and carjacking where defendant also had a very high criminal history category). In light of the specific facts of this case and the government's concession, the Court is satisfied that Mr. Hancock's sentence is unusually long for the crimes of conviction.

The next requirement is a "gross disparity" between the sentence being served and the sentence likely to be imposed at the time the motion was filed. U.S.S.G. § 1B1.13(b)(6). Here, Mr. Hancock was convicted of six offenses, and after some of those offenses merged as lesser-included charges, he was sentenced based on four

convictions: two counts of armed bank robbery and two § 924(c) counts. Doc. 48 at 1–2; Case No. 06-CR-206-2, Doc. 96 at 1–2.

If the Court reduced Mr. Hancock's second § 924(c) sentence to the new statutory minimum and kept everything else the same, his total sentence would be 261 months, which is a significant departure from his current 477-month sentence. But as the Court previously noted, it is not likely that Mr. Hancock would receive a 261-month sentence. Doc. 176 at 9, 11. It is likely that the government would have argued for a longer or consecutive sentence for the July robbery convictions, and it is likely the Court would impose a higher sentence. *See* discussion *infra* at 17–20 (evaluating the § 3553(a) factors).

But even if the sentencing court ran the sentences for the bank robberies consecutively rather than concurrently, Mr. Hancock's new sentence would still be over 13 years less than the sentence that was imposed.[7] And even if the Court imposed a sentence at the high end of the guidelines for the July bank robbery and ran the robbery sentences consecutively, Mr. Hancock's new sentence would still be over 12 years less than the sentence that was imposed.

The Fourth Circuit recently held that a disparity of over eight years constituted a gross disparity. *Crawley*, 140 F.4th at 170–71 (comparing defendant's 188-month sentence with the 84-month likely sentence today). And since the policy statement was enacted, courts in this circuit have found that a disparity between a 235-month sentence

---

[7] The Court weighs the impact of the subsequent murder conviction *infra* in its analysis of the § 3553(a) factors.

15

and a 214-month sentence is a gross disparity, *United States v. Howard*, No. 13-CR-629, 2024 WL 112010, at \*16–17, 19 (D. Md. Jan. 10, 2024); a disparity between a 180-month sentence and a 130-month sentence is a gross disparity, *United States v. Stewart*, No. 13-CR-19, 2024 WL 4860809, at \*11 (W.D. Va. Nov. 21, 2024); a disparity between a 180-month sentence and a 144-month sentence is a gross disparity, *White v. United States*, No. 12-CR-82, 2024 WL 3030652, at \*5 (E.D. Va. June 17, 2024); and a disparity between a 285-month sentence and a 180-month sentence is a gross disparity. *United States v. Tronco-Ramirez*, No. 10-CR-28, 2024 WL 4713576, at \*10–11 (W.D. Va. Nov. 6, 2024). This Court also recently held that a disparity between a 288-month sentence and a 180-month sentence is a gross disparity. *Martin*, 2025 WL 1092723, at \*7.

In its discretion and based on the circumstances of Mr. Hancock's case, the Court finds that there is a gross disparity between Mr. Hancock's 477-month sentence and the sentence he would likely receive today.

Mr. Hancock satisfies all three requirements of § 1B1.13(b)(6). He has shown that "he would benefit from the First Step Act's anti-stacking provision," and that this is an extraordinary and compelling reason for a sentence reduction. *See United States v. Smith*, No. 24-6726, 2025 WL 1864767, at \*3 (4th Cir. July 7, 2025) ("[The defendant] demonstrated extraordinary and compelling reasons for release given that, were he sentenced today, he would benefit from the First Step Act's anti-stacking provision." (cleaned up)).

Relying on § 1B1.13(b)(5), Mr. Hancock also asks the Court to consider his rehabilitation and age as factors in determining whether there are extraordinary and

compelling circumstances. Doc. 220 at 5–7. The Court need not consider these arguments given its finding under § 1B1.13(b)(6). The Court will consider those factors as part of its § 3553(a) analysis.

## VIII. § 3553(a) Factors

The existence of extraordinary and compelling reasons is not enough, by itself, to support a sentence reduction; courts must still consider whether a sentence reduction is appropriate in light of the applicable sentencing factors in § 3553(a). *United States v. Malone*, 57 F.4th 167, 176 (4th Cir. 2023). Those factors "include the nature and circumstances of the offense; the defendant's history and characteristics; the need to provide just punishment, afford adequate deterrence, protect the public, and support rehabilitation; the kinds of sentences available; and the need to avoid unwarranted sentence disparities." *Moody*, 115 F.4th at 315. As with all sentencing decisions by district judges, this evaluation requires the exercise of considerable discretion. *Id.*

Mr. Hancock seeks a reduction of his sentence to time-served or, in the alternative, 261 months. Doc. 220 at 8. But the § 3553(a) factors do not support such a substantial reduction. The underlying offenses are serious and violent, and they merit a sentence longer than the sentence Mr. Hancock proposes.

First, in early 2006, Mr. Hancock committed two armed bank robberies, threatening to shoot multiple people with a firearm, pointing a gun at them, sometimes at close range, and putting their lives at risk, Doc. 160 at ¶¶ 4–6; Case No. 06-CR-206-2, Doc. 289 at ¶¶ 11–12, all while he was facing other state charges. Doc. 160 at ¶ 28; Case No. 06-CR-206-2, Doc. 289 at ¶ 34. No one was physically injured during the robberies,

17

Doc. 160 at ¶ 12; Case No. 06-CR-206-2, Doc. 289 at ¶¶ 17–18, but the conduct was serious, violent, and dangerous.

Second, a time-served or 261-month sentence would also not take into account Mr. Hancock's subsequent conviction for second-degree murder. Doc. 178 at 2. Mr. Hancock murdered Mr. Wright soon after committing the second armed bank robbery, *Id.*; Doc. 160 at ¶ 30, demonstrating a very concerning pattern of dangerous behavior. This criminal conviction was not taken into account in the calculation of his guideline range in either case; if it was, his criminal history category would certainly have been higher. It is also highly likely that state officials took the length of his federal sentences into account when negotiating the plea agreement that led to the concurrent state sentence of 220 to 273 months. Doc. 178 at 6.

Weighing the § 3553(a) factors, a total sentence of 360 months, or 30 years, is appropriate and takes into account the seriousness of Mr. Hancock's history and characteristics. That sentence is still quite lengthy and will provide just punishment. A sentence below 360 months would be insufficient to take into account the seriousness of his conduct and criminal history.

But a sentence beyond 360 months is not necessary. Since entering federal custody, Mr. Hancock has earned his GED and has taken hundreds of hours of educational and vocational courses. Doc. 227-1. He is also a suicide inmate observer and suicide companion. Doc. 220-5. And he has only received two disciplinary infractions during his incarceration, with none in the last decade. Doc. 227-2. The BOP now categorizes Mr. Hancock as a low risk level. Doc. 220-3.

18

A higher sentence would also not take into account the fact that Mr. Hancock was very young when he committed these crimes; courts are encouraged to consider age differently now than at the time he was sentenced. *See* U.S.S.G. § 5H1.1. Mr. Hancock was only 18 years old when he committed the offenses. His age is a mitigating factor in two ways: he was young at the time he committed the offenses, and he is now in his late 30s, making him less likely to reoffend. *See* Doc. 160 at 2; *see also* U.S.S.G. § 5H1.1 ("The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age."). Mr. Hancock had never served a prison sentence before these cases. *See* Doc. 160 at ¶¶ 25. After his active sentence, he will serve a long period under supervised release, Doc. 48 at 2, Case No. 06-CR-206-2, Doc. 96 at 2, further protecting the community.

The Court is also mindful that Mr. Hancock served part of his sentence under harsher conditions than expected because of the COVID-19 pandemic. *See* Doc. 220 at 7; Doc. 229 at 7; *see also Howard*, 2024 WL 112010, at *19 ("[T]he punitive effect of a sentence served during the pandemic is greater than that of a sentence served under normal conditions.").

Having reviewed the entirety of the record, the Court will reduce Mr. Hancock's sentence on Count Three in Case No. 07-CR-71-1 from 300 months to 183 months. This reduces Mr. Hancock's total sentence to a term of 360 months. The Court finds that a sentence of 360 months followed by the five-year term of supervised release is sufficient but not greater than necessary to meet the statutory sentencing goals.

## IX.    Supervised Release

Under § 3582(c)(1)(A), courts are authorized to modify or supplement the conditions of supervised release as part of a sentence reduction.  18 U.S.C. § 3582(c)(1)(A).  The Court has reviewed the standard conditions of supervised release originally imposed, Doc. 48 at 3; Case No. 06-CR-206-2, Doc. 96 at 3, and finds it appropriate to update those conditions to those currently used in this district, as attached to this Order.  The changes from his original conditions are minimal, and consistency with current conditions eases the burden on the Probation Office without increasing the burden on Mr. Hancock.  Each of those requirements is reasonable and appropriate, given Mr. Hancock's history and characteristics.  They are the basic minimum conditions necessary for adequate supervision in his case.

Mr. Hancock must still comply with the special conditions of supervised release included in the original judgment.  Doc. 48 at 4; Case No. 06-CR-206-2, Doc. 96 at 4; Doc. 48 at 4.  To summarize, he must comply with substance abuse testing and treatment, he must provide financial information to the probation officer, and he cannot incur any new credit charges without approval of the probation officer.  Doc. 48 at 4; Case No. 06-CR-206-2, Doc. 96 at 4.  These conditions of supervised release are all connected to his history and characteristics and remain appropriate.

Additional special conditions are necessary to protect the public and ensure that Mr. Hancock complies with the law upon his release.  First, the Court will add a requirement that Mr. Hancock be subject to warrantless searches.  This is appropriate because of his repeated use of firearms to commit crimes.  And given the seriousness of

20

his conduct and to assist him with the transition back into the community, the Court will impose a requirement of 30 days home confinement upon release.

The modified standard and special conditions of supervised release are attached in full to this order.

## X.    Conclusion

Mr. Hancock has satisfied the conditions for a § 3582(c)(1)(A) sentence reduction because he has served over ten years of an unusually long sentence and there is a gross disparity between the sentence he received in 2007 and the sentence he would likely receive today. This is an extraordinary and compelling circumstance under the applicable policy statement and Fourth Circuit law. A sentence reduction is consistent with the § 3553(a) factors. His sentence will be reduced to 360 months imprisonment followed by five years of supervised release with additional conditions.

It is **ORDERED** that:

1. The defendant's motion for compassionate release, Doc. 220; Case No. 06-CR-206-2, Doc. 331, is **GRANTED in part**, and his total sentence in both cases is reduced to 360 months (54 months on Count Four in 06-CR-206-2 and 120 months on Count Five in 06-CR-206-2 to run consecutively; 57 months on Count Two in 07-CR-71-1 to run concurrently with Counts Four and Five in 06-CR-206-2; and 183 month on Count Three in 07-CR-71-1 to run consecutively with Count Two in 07-CR-71-1 and Counts Four and Five in 06-CR-206-2).

2. The defendant's "Motion Requesting Judicial Notice Pursuant to Fed. R. Evid. 201(c)(2)," Doc. 224, while unnecessary, is **GRANTED**, and the Court takes judicial notice of the Sentencing Commission's 2024 amendment to the guidelines at U.S.S.G. § 5H1.1.

3. Upon release, the defendant, James Hancock, **SHALL COMPLY** with the standard and special conditions of supervised release attached hereto and the special conditions of supervised release as imposed in the original judgment at Case No. 06-CR-206-2, Doc. 96; Doc. 48. The term of supervised release remains five years.

4. All other provisions of the original judgment remain in place.

This the 30th day of July, 2025.

_____
UNITED STATES DISTRICT JUDGE

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.      You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.      After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.      You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.      You must answer truthfully the questions asked by your probation officer.

5.      You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.      You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.      You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.      You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not

knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.     If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10.     You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11.     You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12.     If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.

13.     You must follow the instructions of the probation officer related to the conditions of supervision.

## Special Conditions of Supervised Release

1.  The defendant shall submit to substance abuse testing, at any time, as directed by the probation officer. The defendant shall cooperatively participate in a substance abuse treatment program, which may include drug testing or inpatient/residential treatment, and pay for treatment services, as directed by the probation officer. During the course of treatment, the defendant shall abstain from the use of alcoholic beverages and/or any controlled substances unless he has a prescription from a licensed medical provider.

2.  The defendant shall provide any requested financial information to the probation officer.

3.  The defendant shall not incur any new credit charges or open additional lines of credit without approval of the probation officer.

4.  The defendant shall notify the probation officer of any material change in his/her economic circumstances that may affect his/her ability to pay restitution, a fine, or the special assessment.

5.  The defendant shall abide by all conditions and terms of the home detention monitoring program for a period not to exceed 30 days. At the direction of the probation officer, the defendant shall wear a location monitoring device which may include GPS or other monitoring technology and follow all program procedures specified by the probation officer. The defendant shall pay for the location monitoring services as directed by the probation officer.

6.  The defendant shall submit his person, residence, office, vehicle, or any property under his control to a warrantless search. Such search shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.